UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DEREK TRAMON WILLIAMS** | **CIV. ACTION NO. 3:21-03892** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Before the court is Plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

**Background & Procedural History**

Derek Williams protectively filed the instant application for Title II Disability Insurance Benefits on February 26, 2020. (Tr. 10, 234-240).[1] Williams, who was almost 49 years old at the time of the administrative hearing, alleged a disability onset date of December 10, 2019, because of PTSD, anxiety, depression, anal fistula/fissure, cold weather injury to right foot, dental issues, subacute thyroiditis, vitamin D deficiency, acid reflux, and dyssomnia. (Tr. 78, 287, 310). The state agency denied the claim initially on June 16, 2020, and upon reconsideration on November 25, 2020. (Tr. 76-107, 111-114). Thereafter, Williams requested

---

[1] Williams filed prior applications on March 25, 2014, and January 7, 2017, which were denied initially, and apparently not further appealed. *See* Tr. 79. He filed another application on November 13, 2018, which was denied on December 9, 2019, at the hearing level, and by the Appeals Council on February 14, 2020. *Id*.

and received a July 19, 2021 hearing before an Administrative Law Judge ("ALJ"). (Tr. 32-75). In an August 2, 2021 written decision, the ALJ determined that Williams was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 7-20). Williams sought review of the adverse decision before the Appeals Council. On October 20, 2021, however, the Appeals Council denied Williams' request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On November 8, 2021, Williams filed the instant complaint for judicial review of the Commissioner's final decision. Following submission of the administrative transcript and supporting memoranda, the matter is now before the court.

## Standard of Review

This court's standard of review is (1) whether the final decision is supported by substantial evidence, and (2) whether the Commissioner applied the proper legal standards to evaluate the evidence. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citation omitted). The Supreme Court has emphasized that

> [t]he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019) (internal citations omitted). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.

1994).

Upon finding substantial evidence, the court may only review whether the Commissioner has applied proper legal standards and conducted the proceedings consistently with the statute and regulations. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983). In other words, where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed – *unless* the Commissioner applied an incorrect legal standard that materially influenced the decision. *See* 42 U.S.C. § 405; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

### **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). A disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled

3

under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual will be found not disabled if he or she does not have a "severe impairment," or a combination of impairments that is severe, and of the requisite duration.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1], and meets the duration requirement, will be considered disabled without the consideration of vocational factors.

Before proceeding to step four, the Commissioner assesses the individual's residual functional capacity, which is used at both step four and step five to evaluate the claim.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy. If the individual can make such an adjustment, then he or she will be found not disabled. If the individual is unable to adjust to other work, then he or she will be found disabled.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.

When a finding of "disabled" or "not disabled" may be made at any step, a decision will be rendered at that point without proceeding to the remaining steps. 20 C.F.R. §§ 404.1520, 416.920; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). "The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted).

## The ALJ's Findings

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 12). At step two, she found that the claimant suffered severe impairments of major depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder. (Tr. 12-14).[2] She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. *Id*.

### II. Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform work at all exertional levels, "but with the following nonexertional limitations: unskilled, simple work, dealing with objects and data. The claimant cannot have public interaction and only occasional coworker interaction, but no tandem tasks with coworkers." (Tr. 15-18).

### III. Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that the claimant was unable to return to past relevant work. (Tr. 18). Accordingly, she proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual, with at least a high school education. *Id*. Transferability of skills was not material to the determination of

---

[2] The ALJ further determined that the claimant's bunions, history of a fistula, hypertension, and stroke did not cause more than minimal limitation in the claimant's vocational functioning, and, thus, were not severe. *Id*. In addition, the claimant's alcohol use and hand contractures were not medically determinable impairments. *Id*.

disability. *Id*.

The ALJ next observed that, given the claimant's vocational factors, and if he had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. §§ 404.1569, 416.969; Rule 204.00, Appendix 2, Subpart P, Regulations No. 4; Tr. 19. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent the additional limitations eroded the occupational base for work. *Id*. In response, the VE identified the representative jobs of **industrial cleaner**, *Dictionary of Occupational Titles* ("DOT") Code # 381.687-018; **routing clerk**, DOT # 222.687-022; and **kitchen helper**, DOT # 318.687-010, that were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 19, 70).[3]

## **Analysis**

In his opening brief, Williams identified six assignments of error:

(1) In cherry picking the medical evidence of record to find fleeting instances where claimant was having a relatively good day, while apparently ignoring or failing to properly consider the record as a whole, which would have revealed that plaintiff met a listing due to suffering marked difficulties in social functioning and adapting to routine changes in the workplace settings that would have rendered claimant disabled under several listings in Section 11 [sic] of Appendix to Subpart P.

(2) In ignoring Vocational Expert testimony (please see pages 74 – 79 of 945, Document 4-1) concerning a hypothetical individual of claimant's age, work experience and background concerning repeated decompensation events in the work setting time off task in the workplace and absences from work that would render an individual such as the claimant unable to perform any work in the national economy.

---

[3] The VE responded that for the industrial cleaner, routing clerk, and kitchen helper jobs, there were about 25,000, 100,000, and 150,000 positions available nationwide, respectively. (Tr. 70). This incidence of work constitutes a significant number (and range) of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

  (3) In ignoring Veteran's Administration decision concerning claimant's unemployability due to Post Traumatic Stress Disorder and its effects on claimant's ability to function in the workplace.

  (4) In failing to adequately consider the record as a whole to determine claimant's residual functional capacity at the time of his application and his ability to meaningfully function and adapt to the workplace.

  (5) In failing to properly and adequately consider treating health care provider evidence with regard to meeting the criteria of listings under Section 12.00, particularly listing 12.04.

  (6) In failing to properly and adequately consider claimant's testimony concerning repeated mental illness decompensation events in the work setting that rendered claimant unable to perform work in the national economy.

(Pl. Brief [doc. # 10]).

  The court will address Williams' arguments within the context of the sequential evaluation process.

**I. Step Three**

  The listings set out at 20 C.F.R. pt. 404, subpt. P, App. 1 are descriptions of various physical and mental illnesses and abnormalities that are categorized by the body system they affect. *Sullivan v. Zebley*, 493 U.S. 521, 529–31; 110 S.Ct. 885, 891 (1990). Each impairment is defined in terms of specific medical signs, symptoms, or laboratory test results. *Id*. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id*.; 20 C.F.R. § 404.1525(d). Further, an impairment(s) is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). Again, however, "[t]he claimant must provide medical

findings that support each of the criteria for the equivalent impairment determination." *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citations omitted).

In her decision, the ALJ considered whether Williams' impairments met or medically equaled listings 12.04 for depressive, bipolar and related disorders; 12.06 for anxiety and obsessive-compulsive disorders; and 12.15 for trauma and stress-related disorders. Each of these listings includes three paragraphs designated A, B, and C. 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00A(2). The claimant's mental disorder must satisfy the requirements of both paragraphs A and B or the requirements of both paragraphs A and C. *Id*.

Paragraph B of each listing addresses four areas of mental functioning that a person uses in a work setting. 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00A(2)(b). They include understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id*. To satisfy the B criteria, the mental disorder must result in "extreme" limitation of one, or "marked" limitation of two of the four areas of mental functioning. *Id*. A "marked" limitation means that the ability to function "independently, appropriately, effectively, and on a sustained basis is **seriously** limited." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F(2)(d) (emphasis added). An "extreme" limitation means the **inability** "to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F(2)(e).

To satisfy the paragraph C criteria, the claimant's mental disorder must be "serious and persistent," that is, there must be a medically documented history of the existence of the disorder over a period of at least two years and evidence that satisfies the criteria in both C1 and C2. 20

C.F.R. pt. 404, subpt. P, App. 1, § 12.00A(2)(c). For listings 12.04, 12.06, and 12.15, the criteria in both C1 and C2 require evidence of both

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder and

2. Marginal adjustment, that is the [claimant has] minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life.

*See, e.g.*, 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.04C(1) & (2) (internal citations omitted).

"Marginal adjustment" means that the claimant's adaptation to the requirements of daily life is fragile; that is, the claimant has minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life. 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00G(2)(c). Marginal adjustment may be demonstrated with evidence to show that changes or increased demands led to exacerbation of symptoms and signs and deterioration in functioning. *Id*.

When evaluating the severity of mental impairments, the Commissioner is obliged to apply a "special technique." 20 C.F.R. § 404.1520a. If the Commissioner determines that the claimant has a medically determinable mental impairment(s), then the Commissioner must rate the degree of functional limitation resulting from the impairment(s). 20 C.F.R. § 404.1520a(b). The four broad functional areas track the same areas contemplated in paragraph B of the mental impairment listings, i.e., understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c). The special technique is completed at the initial, reconsideration, and at the administrative law judge levels. 20 C.F.R. § 404.1520a(e).

In this case, non-examining agency psychologist, Gary Lindsay, Ph.D., reviewed the record and completed the special technique on June 10, 2020, finding that Williams had severe impairments of depressive disorder and trauma/stress-related disorder, which caused *mild* limitations in two domains: understanding, remembering, or applying information; plus adapting or managing oneself; and *moderate* limitations in the domains of interacting with others and concentration, persistence, or maintaining pace. (Tr. 84-85).

On November 24, 2020, non-examining agency psychologist James Pinkston, Ph.D., reviewed the record and completed the special technique with findings that were consistent with Dr. Lindsay. (Tr. 96-98).

In her application of the special technique, the ALJ found that Williams had mild limitations in three of the four functional areas and only a moderate limitation in the domain of interacting with others. (Tr. 14). Consequently, she determined that Williams did not meet or equal the paragraph B criteria for listings 12.04, 12.06, and 12.15. *Id.* She further found that Williams did not meet the paragraph C criteria because Williams stated that he was able to attend to his personal needs independently, watch television without problems, and walk regularly. *Id.*

Williams contends that the ALJ erred in failing to find that he had marked limitations of functioning in the areas of 1) interacting with others and 2) concentration, persistence, or maintenance of pace. If she had, then a finding of disabled would have been mandated at step three of the sequential evaluation process. However, both non-examining agency psychologists opined that Williams' mental impairments resulted in less than marked limitations of functioning. *See* discussion, *supra*. Ultimately, the ALJ discounted those opinions because she found that Williams' functional limitations were even *less* severe than what the non-examining

10

psychologists opined. *See* Tr. 17. Regardless, the findings by Drs. Lindsay and Pinkston provide a floor for the ALJ's determination that Williams' impairments caused less than marked limitations of functioning.

Of course, the ALJ's determination also was influenced and supported by a January 9, 2020 neuropsychiatric evaluation administered by Herbert Vandenberg, M.D. (Tr. 417-419). Williams reported to Dr. Vandenberg that he struggled with PTSD and depression, which caused him to be disabled. *Id.* Williams explained that his symptoms waxed and waned in severity, and that he would do well for a couple of months until something happened and he fell into deep depression. *Id.* Williams was not sleeping well and felt tired all of the time. *Id.* He had one prior psychiatric hospitalization and two suicide attempts. *Id.* He reported arthritis in his right shoulder and hands. *Id.* Upon examination, he had adequate strength and tone in upper and lower extremities. *Id.* His recent memory was fair, and remote memory was good. *Id.* His insight was fair, judgment intact, and intelligence was average. *Id.* He denied suicidal and homicidal ideation. *Id.* His affect was constricted, and mood was anxious. *Id.* Vandenburg diagnosed major depressive disorder, recurrent in partial remission; history of PTSD, and assigned a Global Assessment of Functioning score ("GAF") of 70.[4] *See* Tr. 95.[5]

---

[4] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd*, 239 F.3d at 701, n.2 (citing American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed. 1994) (DSM-IV)). A GAF of 61-70 indicates "**[s]ome mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships**." DSM-IV, pg. 32. The court acknowledges that the GAF has fallen out of favor in the mental health community. However, it still serves to denote that provider's assessment of the individual's overall functioning level, at that time.

[5] The last page or two of Dr. Vandenberg's report appears to be missing from the record.

11

Furthermore, on December 30, 2019, Williams saw Gregory Andrews, Ph.D., for a mental health consultation. (Tr. 484-489). At that time, Williams was positive for severe depression, clinically significant anxiety, and severe PTSD symptoms. *Id.* However, those findings were based on Williams' self-report questionnaires. *Id.* Moreover, his mental status examination was within normal limits, and he was provided with breathing exercises and community follow-up. *Id.*

On August 18, 2020, Williams was seen by Chantel Burns, M.D., at the emergency department because of palpitations. (Tr. 617-620). Williams admitted to some extra stress in his life lately. *Id.* He noted that the palpitations were a new, intermittent problem that had started two days earlier. *Id.* Dr. Burns diagnosed anxiety/stress-induced palpitations and encouraged Williams to take his medication for the symptoms. *Id.*

On September 25, 2020, Williams saw Cynthia Brown-Manning, M.D., for six-month follow-up. (Tr. 662-667). He was positive for anxiety and depression but stated that he was doing well on his medication. *Id.* Upon examination, Williams exhibited full range of motion and normal muscle strength in his extremities. *Id.* He was positive for contractures of both hands, and atrophy and wasting was noted. *Id.* Nonetheless, his judgment and insight were good. *Id.* In fact, he was happy and expressive. *Id.* His remote and recent memory were good. *Id.* He had no homicidal or suicidal ideation. *Id.* Brown-Manning assessed Williams with PTSD, with GAD. *Id.*

---

However, his findings were summarized by the disability examiner at the state agency level. *See* Tr. 95. Neither side has contested the accuracy of the summary. *See Garcia v. Berryhill*, 880 F.3d 700, 704–05 (5th Cir. 2018) (harmless error for ALJ to rely on report summary where plaintiff provided no reason to believe the original report would somehow swing the evidentiary pendulum in his favor).

At an October 22, 2020, appointment with Robert Humble, M.D., Williams denied anxiety, depression, change in sleep habits, or excessive stress. (Tr. 732-737).

On October 23, 2020, Williams saw Julia Rodgers, M.D., for follow-up after his emergency department visit for palpitations. (Tr. 863-865). Williams admitted continued anxiety and symptoms of PTSD. *Id.* However, he did not complain of any arthralgias, joint swelling, or neck pain. *Id.* Rodgers assessed Williams with palpitations that seemed to be related to his PTSD and instructed him to continue taking his medication. *Id.*

Williams contends that the ALJ erred by "cherry picking" only certain medical evidence and purportedly "fleeting" instances where he was having a good day. However, the medical record from the relevant period consistently supports the ALJ's step three findings. *See* discussion, *supra*. Moreover, on the disability questionnaire that Williams completed on April 15, 2020, he indicated that he was comfortable around his children, alumni, and military battle buddies. (Tr. 332). He also regularly drove to the store and transported his child to and from school. *Id*. Williams also admitted to being able to get along with authority figures, so long as he did not feel threatened. (Tr. 334). Although he stated that he did not handle changes in routine well, he explained that if he could, he would. *Id*. At the hearing, Williams added that, if an employer changed a work practice or rules, he would become angry because he likes consistency and a routine. (Tr. 61). However, he did not say that he was incapable of managing the change.

Williams further argues that the ALJ erred when she failed to credit or even address his Veterans Administration ("VA") disability determination and two psychiatry evaluations that Williams obtained from Michael Cesta, M.D., in 2016 and October 2019, apparently for

13

purposes of his VA disability claims. *See* Tr. 457-458, 588-609. However, following the 2017 amendments to the regulations, the Commissioner no longer is required to provide any analysis about a decision made by another governmental agency. 20 C.F.R. §§ 404.1504 and 404.1520b(c)(1).

Furthermore, in his evaluations, Dr. Cesta essentially concluded that Williams was completely disabled and unemployable. Under the current regulations, however, the Commissioner will not provide any analysis about statements regarding issues that are reserved to the Commissioner, including statements about whether a claimant is disabled, able to work, or able to perform regular or continuing work. 20 C.F.R. § 404.1520b(c)(3). Accordingly, the ALJ did not err by omitting discussion of the VA disability determination and Dr. Cesta's reports.

The court further observes that Dr. Cesta examined Williams in 2016 and then issued a records-only reevaluation in October 2019. However, Williams alleged a disability onset date of December 10, 2019, i.e., after Dr. Cesta's reevaluation, and well after his 2016 examination. Of course, Williams' previous social security disability applications were denied for the period prior to December 10, 2019.

In short, the court finds that the ALJ's step three determination is supported by substantial evidence and remains free of legal error.

**II.     RFC**

Williams challenges the ALJ's RFC by re-urging many of the same arguments that he advanced in favor of reversal at step three. Accordingly, for the same reasons the court found Williams' arguments unavailing at step three, they prove ineffective here. The court would add

that the ALJ's mental RFC is substantially supported by the findings of the non-examining agency psychologists. For example, on June 10, 2020, Dr. Lindsay completed a mental residual functional capacity assessment in which he determined that Williams had no understanding and memory limitations, but moderate limitations in his ability to carry out detailed instructions and to maintain attention and concentration for extended periods. (Tr. 87-88). His ability to interact appropriately with the general public, to work in coordination or in proximity to others, and his ability to get along with others were moderately limited. *Id.* Ultimately, Lindsay concluded that Williams was able to understand, remember and carry out simple and detailed tasks involving objects and data with routine supervision for 1-4 step instructions for two-hour periods over the course of the normal workday with incidental contact with the general public. *Id.*

On November 24, 2020, Dr. Pinkston reviewed the record and issued a mental residual functional capacity assessment that was consistent with Dr. Lindsay's findings. *See* Tr. 100-101.

In her RFC determination the ALJ endorsed social interaction limitations that at least equaled in severity the limitations recognized by the state agency consultants. Moreover, while the ALJ endeavored to distance herself from the state agency consultants' finding that Williams had moderate limitations in concentrating, persisting, and maintaining pace, she nonetheless limited him to unskilled, simple work. (Tr. 15). An RFC limited to simple work reasonably incorporates at least a moderate limitation in concentration, persistence, or pace. *See Reid v. Astrue*, Civ. Action No. 10-0237, 2011 WL 4101302 (S.D. Miss. Aug. 15, 2011), *R&R adopted*, 2011 WL 4101277 (S.D. Miss. Sept. 8, 2011); *Madrid v. Colvin*, Civ. Action No. 12-800, 2013

WL 6641305 (N.D. Tex. Dec. 17, 2013); *Cornejo v. Colvin*, Civ. Action No. 11-470, 2013 WL 2539710 (W.D. Tex. June 7, 2013).

Williams also argues that the ALJ erred by failing to consider his testimony regarding repeated mental illness decompensation events in the work setting. However, when he worked at the post office, Williams admitted that most of the issues were inside the post office and implied that once he got out on the road alone he did not have problems. *See* Tr. 63. In fact, he suggested that coworkers, other than messy ones, were not an issue. *Id*.

Williams' argument seems to fault the ALJ for failing to address whether he could maintain any employment for a significant period of time. *See Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). However, the Fifth Circuit has confirmed that remand for a determination of whether a claimant can maintain employment is not required where, as here: 1) the claimant did not assert that his condition would only periodically preclude his from working, and 2) did not offer medical evidence that his condition would intermittently prevent him from maintaining employment or functioning in the employment context. *Wise v. Barnhart*, 101 Fed. App'x. 950 (5th Cir. 2004).

Williams does not meaningfully challenge the ALJ's physical RFC determination that he retains the ability to perform work at all exertional levels. While the ALJ's essentially benign physical RFC is substantially supported by Williams' medical treatment records, *see* Tr. 18 and discussion, *supra*, it also is supported at least for work at the light exertional level by the findings of the non-examining agency physicians, Drs. Boatman and Faludi. *See* Tr. 86-87, 98-100. Furthermore, at least one of the *representative* jobs identified by the VE was performed at the light exertional level. (Tr. 19, 70).

16

In sum, the court finds that the ALJ's RFC determination is supported by substantial evidence and remains free of legal error.

## III. Step Five

Finally, Williams argues that the ALJ erred in her step-five determination by ignoring the VE's testimony in response to various hypotheticals proffered by Williams' attorney at the hearing. *See* Tr. 71-74. However, the VE's testimony regarding the effects of additional or different limitations, not adopted by the ALJ in her RFC, prove immaterial, so long, as here, her RFC is supported by substantial evidence. *See* discussion, *supra*; *Vaught v. Astrue*, 271 Fed. App'x. 452, 456 (5th Cir.2008) (plaintiff's argument amounts to a disagreement with the ALJ's RFC, but that determination was supported by substantial evidence). Furthermore, a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). In short, Williams' assignment of error lacks merit.

## Conclusion

The ALJ in this case was tasked with determining whether the claimant was disabled. In so doing, she considered the hearing testimony, the medical records, and expert opinion evidence. The evidence was not necessarily uniform, and according to Williams, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs *against* the Commissioner's decision." *Newton, supra* (emphasis

17

added).   That is not to say that the Commissioner's decision necessarily is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).[6]

For the foregoing reasons, the undersigned finds that the Commissioner's determination that the claimant is not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error.   Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

---

[6] Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision."   *Morris v. Bowen,* 864 F.2d 333, 334 (5th Cir. 2007).

In Chambers, at Monroe, Louisiana, on this 6th day of February, 2023.

                                                KAYLA DYE MCCLUSKY
                                                UNITED STATES MAGISTRATE JUDGE